IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORLANDO SCOTT MARTIN,

    Petitioner,                      No. 2:05-cv-1113 GEB KJN P

   vs.

JEANNE S. WOODFORD, et al.,

    Respondents.                 FINDINGS AND RECOMMENDATIONS

                                 /

I. Introduction

       Petitioner is a former state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2002 conviction on charges of corporal injury of a cohabitant, assault with a deadly weapon, making terrorist threats, and dissuading a witness.  Petitioner was sentenced to nine years in state prison.  Petitioner raises three claims in his petition, filed June 6, 2005, that his prison sentence violates the Constitution.

II. Procedural History

       Petitioner filed a timely appeal to the California Court of Appeal, Third Appellate District.  (Resp'ts' Lodged Document ("LD") 1, 2 & 3.)  The conviction and sentence were affirmed.  (LD 4.)  Petitioner did not file a petition for review in the California Supreme Court.

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, which was denied. (LD 9.) Petitioner filed two petitions for writ of habeas corpus in the Sacramento County Superior Court which were denied. (LD 10 & 11.) Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on June 3, 2004. (LD 5.) The petition was denied. (LD 6.)

## III. Facts[1]

> In August 2001, [petitioner] stabbed Deborah N., his live-in girlfriend, with a butcher knife. When she raised her right arm to protect herself, he stabbed her through the top portion of her arm, through the back of her arm, and into her left breast.
>
> In October 2001, Deborah N. testified against [petitioner] at the preliminary hearing. After she testified, [petitioner] told her that he was "going to get" her. Deborah N. took his statement as a threat and she was scared.
>
> Deborah N.'s friend saw [petitioner] turn around and look at Deborah N. when she sat down in the audience. [Petitioner] said something to the effect that she was lying and he was "going to get" her. As a result, Deborah N. was visibly afraid; she started shaking and crying.
>
> The court reporter who was reporting the case saw [petitioner] mouth the words, "I'm going to get you."
>
> The supervising victim advocate, who had accompanied Deborah N. to the hearing, saw [petitioner] look over his shoulder and say to her, "I'm going to get you." Deborah N. was crying and visibly upset; she took the statement as a threat and believed that [petitioner] would come and get her.
>
> [Petitioner] testified on his own behalf. He denied threatening Deborah N. at the preliminary hearing. He denied saying or mouthing anything to her.

(People v. Martin, slip op. at 2-3.)

////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Martin, No. C042425 (February 17, 2004), a copy of which was lodged by Respondent as LD 4 on September 19, 2005.

IV. Standards for a Writ of Habeas Corpus

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be used to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

V. Petitioner's Claims

    A. Failure to Remove Prospective Juror

Petitioner first claims that because the trial court denied a defense challenge for cause against Juror One who allegedly revealed an obvious bias against the defense, petitioner's conviction must be reversed. Respondents contend this claim is procedurally barred as defense

4

counsel failed to use his remaining peremptory challenge to remove Juror One from the panel.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] contends the trial court erred by denying his challenge for cause to a prospective juror who "revealed an obvious bias against the defense." The People respond that the claim is barred because after the challenge was denied [petitioner] failed to use his remaining peremptory challenge to remove the juror and instead removed a different juror. [Petitioner] replies that cases suggesting the defense must use a peremptory challenge to remove the juror in question are mistaken. The People have the better argument.
>
> Toward the end of jury selection, [petitioner] challenged Juror No. 1 for cause. The trial court denied the challenge. [Petitioner] then exercised his remaining peremptory challenge against Juror No. 10. When he later attempted to exercise a challenge against Juror No. 1, he found that he was out of challenges.
>
> "To preserve a claim based on the trial court's overruling a defense challenge for cause, a [petitioner] must show (1) *he used an available peremptory challenge to remove the juror in question*; (2) he exhausted all of his peremptory challenges or can justify the failure to do so; and (3) he expressed dissatisfaction with the jury ultimately selected." (*People v. Maury* (2003) 30 Cal.4th 342, 379, italics added.)
>
> Contrary to [petitioner's] argument, the requirement that the juror in question be removed is neither new nor an apparent mistake. Prior to *People v. Maury*, our Supreme Court had stated the requirement in several cases. (E.g., *People v. Weaver* (2001) 26 Cal.4th 876, 911; *People v. Seaton* (2001) 26 Cal.4th 598, 637; *People v. Cunningham* (2001) 25 Cal.4th 926, 976; *People v. Samayoa* (1997) 15 Cal.4th 795, 821; *People v. Carpenter* (1997) 15 Cal.4th 312, 355; *People v. Crittenden* (1994) 9 Cal.4th 83, 121; *People v. Morris* (1991) 53 Cal.3d 152, 184, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1; *People v. Bittaker* (1989) 48 Cal.3d 1046, 1087 (*Bittaker*); *People v. Coleman* (1988) 46 Cal.3d 749, 770.)
>
> Under these cases, the [petitioner] must, if possible, remove the objectionable prospective juror by peremptory challenge and show that he was thereby "deprived of a peremptory challenge which he would have used to excuse a juror who sat on his case." (*Bittaker, supra,* 48 Cal.3d at p. 1088, italics added.) In this case, the denial of the challenge for cause to Juror No. 1 did not deprive

> [petitioner] of a peremptory challenge, because he did not use a peremptory challenge to remove Juror No. 1.
>
> Not only is this rule not mistaken, it is not of recent origin. In *People v. Coleman, supra*, 46 Cal.3d 749, the court relied on our opinion in *Kimbley v. Kaiser Foundation Hospitals* (1985) 164 Cal.App.3d 1166 at page 1169, which in turn relied on *People v. Goldberg* (1952) 110 Cal.App.2d 17 at page 23. *Goldberg* explained that "The rule, supported by ample authority, is stated as follows in 8 California Jurisprudence, page 609, section 595: 'The erroneous disallowance of a challenge for cause is harmless if it does not appear that an objectionable juror was forced upon the [petitioner]. If the [petitioner] had not exhausted his peremptory challenges he cannot complain of the error, for, if he *afterwards* peremptorily challenged *the objectionable juror*, he is not prejudiced; and *if he did not do so, he cannot complain of an error the injurious effects of which he has suffered, if at all, only by reason of his acquiescence in or failure to avoid it when he had the means and opportunity to do so.'" (*Ibid.*, italics added.)
>
> In this case, the disallowance of the challenge to Juror No. 1 was harmless because, at the time, [petitioner] had not exhausted his peremptory challenges and he did not exercise a peremptory challenge immediately thereafter, " when he had the means and opportunity to do so." (*People v. Goldberg, supra,* 110 Cal.App.2d at p. 23, italics added.) Instead, he delayed his challenge until after he challenged Juror No. 10; at that point, he no longer had "the means," i.e., an available challenge, with which to challenge Juror No. 1.

(People v. Martin, slip op. at 3-5.)

Federal courts may reach the merits of habeas petitions, despite an asserted procedural bar, so long as they are clearly not meritorious. Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997). Because the instant claim is without merit, the undersigned will not reach the procedural bar issue.

Because no state court has considered the merits of this claim, the undersigned conducts a de novo review. Nulph v. Cook, 333 F.2d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961); see also Ross v. Oklahoma, 487 U.S. 81, 85 (1988); Green v. White, 232 F.3d 671, 676 (9th Cir.

6

1  2000). Due process requires that the defendant be tried by "a jury capable and willing to decide
2  the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). Jurors
3  are objectionable if they have formed such deep and strong impressions that they will not listen
4  to testimony with an open mind. Irvin, 366 U.S. at 722 n.3.

5      Juror One was questioned as follows:

6      BY THE COURT: And Mr. ****** (Juror One)?

7      BY JUROR ONE: Yes.

8      Q. Do you have some answers to any of the questions I asked the other jurors?

9      A. There was – excuse me – domestic violence in my family when
I was growing up until my mother got divorced.

11      Q. And does that background – will that background interfere with
your judgment in this case, do you think?

12      A. Well, I thought about it long and hard. I think it probably
would because I don't think there's a reason for it. On the first
13  instance, where that is brought to light, I think that people should
be separated. I don't think our law does that; I think it keeps going
14  until it blows up. I don't think it's handled properly.

15      Q. In the experience that you had, did law enforcement ever get involved?

16      A. Back then I was seven. I'm sure – it was a small town – cops
were there a lot, up until the time my parents got divorced.

18  I had an employee that worked for me that was abused for seven
years in Utah, and the law enforcement was involved then all the
time, but like I say, nothing ever happened.

20      Q. Were you dissatisfied with the response of law enforcement or
prosecutorial agencies?

21      A. I don't think they do enough. And when it's done, it's too late.

22      Q. Okay. Given what your feelings are and what your background
is, do you think that's going to make it impossible for you to
23  decide this case based on the evidence and the law as I instruct you
on it?

25      A. I'd like to say no. I – I couldn't tell you honestly. I'd try to be
impartial, but I don't know.

26      Q. Okay. Well, recognizing that you're not going to be called

7

upon to impose any penalty or sentence, assuming a verdict of guilty, you're only here to decide whether the crime has been committed or not, and that is the extent of what your decision-making will be.

Do you believe you can set aside your personal experience and your personal feelings and apply the law to the evidence that you're going to hear and render a decision based only on those factors?

A. I would try my hardest.

Q. Okay. In your present state of mind, do you accept that [petitioner] is innocent as you sit here right now without any evidence having been introduced?

A. Honestly, I don't think he's innocent or he wouldn't be here.

Q. Okay. And are you – do you believe that you're either unwilling or incapable of following my instruction that he's presumed to be innocent until evidence is introduced to the contrary?

A. I would try my best, Your Honor.

Q. Okay. Well, in your present state of mind, do you believe that the prosecution has to come forward and prove their case beyond a reasonable doubt?

A. Yes.

Q. Do you believe that you, with your present state of mind, that you're capable of holding the prosecution to that burden?

A. I do.

Q. In other words, given what you've told me, my concern is that prosecution puts up some evidence but maybe there's still some doubt and – in your – with your state of mind, even though it wasn't beyond a reasonable doubt, your state of mind is, well, he's probably guilty even though there's some doubt. That – that means the prosecution hasn't met their burden of proof.

A. Uh-huh.

Q. Can you follow the law in that area and apply the standard that the law requires?

A. I would try.

Q. Okay. All right. Let's see –

| | |
|---|---|
| 1 | You also indicated, Mr. ******* (Juror One), that you – either you or a close friend or relative is employed with the Redding SWAT Team? |
| 2 | |
| 3 | A. That's correct. A cousin. |
| 4 | Q. Are you at all familiar with the type of work that your cousin does? |
| 5 | A. A little. I don't talk too much to him. |
| 6 | Q. Okay. Do you think what you know about what your cousin does would make it difficult for you to evaluate the testimony of law enforcement witnesses? |
| 7 | |
| 8 | A. No, not at all. |
| 9 | THE COURT: Okay. All right, Mr. ******* (Juror One), thank you. |
| 10 | (RT 140-43.) |
| 11 | . . . |
| 12 | (BENCH CONFERENCE, OUT OF THE HEARING OF THE JURORS, AS FOLLOWS:) |
| 13 | MR. LEONARD: With regards to Mr. ******* (Juror One) saying he – he felt that simply because he's here he must be guilty of something, I would like to go into that a little further and then I would ask that he be excused for cause. |
| 14 | |
| 15 | |
| 16 | THE COURT: All right. I'll let you go into it further. Then we'll address your challenge. |
| 17 | MR. LEONARD: Okay. |
| 18 | (BENCH CONFERENCE CONCLUDED.) |
| 19 | THE COURT: Mr. Leonard? |
| 20 | BY MR. LEONARD: Mr. ******* (Juror One), correct me if I'm wrong, but when the Judge asked you about your feelings as far as guilt or innocence goes, I thought you made a statement saying that the [petitioner] must be guilty because he's here. |
| 21 | |
| 22 | |
| 23 | BY JUROR ONE: That's correct. |
| 24 | Q. Is that your feeling that the burden of proof is on the [petitioner] to say he's innocent rather than the DA proving he's guilty? |
| 25 | |
| 26 | A. Exactly. I think it's your burden. |

9

1  Q. You know that's not the law though?

2  A. Yes.

3  Q. And you would follow that anyway, follow the law as the Judge gave it to you rather than your own feeling?

4  A. I would try. As I told the Judge.

5  MR. LEONARD: Your Honor, I would –

6  THE COURT: Let me ask a question in follow-up to you.

7  Are you done with your questions, Mr. Leonard?

8  MR. LEONARD: Yes.

9  BY THE COURT: A couple of – I don't know how long ago it was, but it was this morning, I asked a question to the jury in general about the possibility that the [petitioner] might not take the witness stand in this case, which is his Constitutional right not to do.

He has a Constitutional right to simply force the prosecution to prove his guilt, and he doesn't have to take the stand in his own defense.

Assuming that happens in this case and – would you draw any inference from the fact that Mr. Martin didn't testify?

16  A. No, I would not.

17  Q. In other words, there wouldn't be any thought in your mind if Mr. Martin didn't testify that he must be guilty?

18  A. No, I – I couldn't say how everything would lay out or plan. I don't know what they would have to say.

20  I'd just try to be impartial and follow the law. That's all I can say.

21  Q. Well, the law and my instructions on the law up to now are that Mr. Martin is presumed innocent –

22  A. Correct.

23  Q. As he sits here right now.

24  Do you accept that instruction?

25  A. Yes, I do.

26

1        Q. And will you follow that instruction?

2        A. I will.

3        THE COURT: Thank you, Mr. ******* (Juror One).

4        MR. LEONARD: Your Honor, I would challenge for cause.

5        THE COURT: All right. The challenge for cause is denied.

6  (RT 159-61.)

7        Review of the record does not suggest juror bias on the part of Juror One. A review of the full discourse between the trial court and the juror in question reflects that the juror pronounced himself ready and able to judge this case on the facts before him without regard to whether petitioner testified. In any event, petitioner did testify, thereby countervailing any prejudice the juror may have had towards criminal defendants who remain silent at trial. This claim should be denied.

      B. <u>Insufficient Evidence</u>

      In grounds two and three, petitioner claims there was insufficient evidence to support his conviction of making criminal threats. (Pet. 4-5.) Petitioner alleges there was insufficient evidence to demonstrate a criminal threat of death or great bodily injury, and that any interpretation of California Penal Code § 422 that would find the facts in his case sufficient to demonstrate such a threat would violate his due process rights. Respondent contends petitioner's conviction is supported by substantial evidence.

      The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> [Petitioner] contends his conviction of threatening to commit a crime resulting in death or great bodily injury (§ 422) is not

11

supported by sufficient evidence.[2] We are not persuaded.

> "'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.'" (*People v. Carpenter, supra,* 15 Cal.4th at p. 387, quoting *People v. Johnson* (1993) 6 Cal.4th 1, 38; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574].)

> [Petitioner] first contends his threat, "I'm going to get you," did not threaten death or great bodily injury. We disagree.

> [Petitioner] voiced this threat immediately after Deborah N. provided testimony that resulted in his being bound over for trial. Her testimony that he had stabbed her arm and breast with a butcher knife causing great bodily injury that persisted through the time of trial, gave meaning to his threat. The jury could readily interpret [petitioner's] words as a threat to inflict further great bodily injury. There was substantial evidence of the requisite threat. (*People v. Carpenter, supra,* 15 Cal.4th at p. 387.)

> [Petitioner] contends the "circumstances evidenced no prospect whatsoever of immediate execution of the threat," because he had "no prospect whatsoever of release for months, if not years." However, the language of the threat did not exclude the possibility that [petitioner] would "get" Deborah N. vicariously through an unincarcerated agent.[3] Nor did the circumstances suggest that the

---

[2] California Penal Code § 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

[3] We have previously held that "Section 422 does not in terms apply only to *threats made by the threatener personally* to the victim nor is such a limitation reasonably inferable from its language." (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659, italics added.) For the same reasons, section 422 is not limited to crimes to be committed "by the threatener personally." (See

> jailed [petitioner] had no prospect of obtaining the required assistance. [Petitioner]'s conviction for threatening to commit a crime resulting in death or great bodily injury is supported by substantial evidence. (*People v. Carpenter, supra*, 15 Cal.4th at p. 387.)

(People v. Martin, slip op. at 7-9.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Juan H. v. Allen, 408 F.3d at 1275.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the

---

*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1155 [threat to "hire gang bangers to kill or get" the victim].)

1  inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The
2  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether
3  the jury could reasonably arrive at its verdict. United States v. Dinkane, 17 F.3d 1192, 1196 (9th
4  Cir. 1994) (citation omitted). "The question is not whether we are personally convinced beyond
5  a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors
6  reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court
7  determines the sufficiency of the evidence in reference to the substantive elements of the criminal
8  offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

9  First, the state court's finding as to what constitutes a threat under California law
10 is binding on this court on habeas review. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

11 Second, the state court did not unreasonably apply Jackson in concluding there
12 was sufficient evidence to support petitioner's conviction under California Penal Code § 422.
13 Here, the victim testified that petitioner told her, in front of witnesses, that he was going "to get
14 her." (RT 202-03, 251-52, 272-73, 279.) The testimony of a single witness is sufficient to
15 uphold a conviction. Bruce v. Terhune, 376 F.3d 950, 957-58 (9th Cir. 2004) (per curiam). A
16 jury's credibility determination is entitled to near-total deference when a federal habeas court is
17 deciding whether there was sufficient evidence to support the verdict. Bruce, 376 F.3d at 957. In
18 addition, the victim's testimony concerning this threat was corroborated by the testimony of
19 Burgundy Brooke Henrickson and Karen Van Maren; both witnessed petitioner making the
20 statement to the victim after she testified at the preliminary hearing. (RT 273, 279.)

21 Petitioner's self-serving statement that the testimony was "materially untrue" or
22 "misinformation," does not, without more, mean there was insufficient evidence for the jury to
23 believe the victim's contrary testimony at trial. Moreover, California Penal Code § 422
24 encompasses threats that are solely verbal. People v. Mirmirani, 30 Cal.3d 375, 178 Cal.Rptr.
25 792 (1981) (words alone can constitute a threat under Cal. Penal Code § 422). Here, the jury
26 found petitioner guilty of stabbing the victim through her arm and into her breast. (CT 166-67.)

1  This finding, taken with the victim's testimony concerning petitioner's verbal threat, was
2  sufficient to support petitioner's conviction under California Penal Code § 422.  "Circumstantial
3  evidence and reasonable inferences drawn from it may properly form the basis of a conviction."
4  Schad v. Ryan, 606 F.3d 1022, 1038 (9th Cir. 2010); Walters v. Maas, 45 F.3d 1355, 1358 (9th
5  Cir. 1995).  Viewing the evidence in the light most favorable to the prosecution, Jackson, 443
6  U.S. at 319, it was not objectively unreasonable for the state court to conclude the evidence was
7  sufficient to support the conviction under Penal Code § 422.
8        Accordingly, petitioner's due process rights were not violated because there was
9  sufficient evidence to support the conviction for making a criminal threat.  Consequently, the
10  state courts' decision denying petitioner's claim was not contrary to, or an unreasonable
11  application of, clearly established Supreme Court precedent.

      C.  Ineffective Assistance of Counsel

13        In the section marked "Ground Four," petitioner writes:  "[Petitioner's] trial
14  counsel['s] failure to take the necessary procedural steps to preserve an obvious issue certainly is
15  an act of constitutionally ineffective assistance of trial counsel."  (Pet. at 5.)  Under the
16  supporting facts section, petitioner writes:  "The Sixth Amendment provides that in all criminal
17  prosecution the accused shall enjoy the right to effective assistance of counsel for his defense."
18  (Id.)  Petitioner's traverse offers no additional clarification of petitioner's specific claims:

> Petitioner contends that the instant habeas claims stem from
> ineffective assistance of trial counsel.  Counsel's actions during
> trial were the same as a second prosecutor.  Petitioner's fact
> exhibits and reference to R.T. & Police Reports shows glaring,
> satisfactory, and conclusive evidence that petitioner met the
> requirement under the provisions of Strickland v. Washington. . . .

23  (Dkt. No. 13 at 10.)
24        Respondents contend that petitioner has failed to provide sufficient facts to
25  demonstrate a constitutional violation.
26        In order to prevail on his claim of ineffective assistance of counsel, petitioner

15

must show two things, an unreasonable error and prejudice flowing from that error.  First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 688 (1984).  The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id. at 690.

Second, petitioner must prove prejudice.  Strickland, 466 U.S. at 693.  To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

"It is well-settled that [c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (citation omitted).  Petitioner's alleged claim of ineffective assistance of counsel was mentioned in a single sentence, without benefit of argument or citation to case law or the record. Petitioner has failed to identify the procedural step he believed counsel should have taken, and the allegations set forth in the traverse were even more general.  "Counsel's actions during trial were the same as a second prosecutor."  (Id.)  Such conclusory allegations do not meet the specificity requirement.  Therefore, petitioner's third claim should be denied.

VI. Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 26, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mart1113.157